# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM and STACY SHIPP,

                Plaintiffs,

   v.

DONNA DONAHER, et al.,

                Defendants.

CIVIL ACTION

No. 09-2475

Pollak, J.                                         March 25, 2010

## OPINION

Plaintiffs William and Stacy Shipp have sued (1) PNC Bank, N.A. ("PNC"), (2) Tucker Arensberg, PC ("Tucker"), (3) PNC's Chief Executive Officer, James Rohr,[1] (4) Donna Donaher, an attorney at Tucker, (5) Jason Fyk, (6) For Your Kids, Inc.,[2] a company owned by Fyk, (7) an association identified in the complaint as "the PNC/[Tucker] Clan," and (8) Doe defendants, alleging that defendants' actions in connection with two confessed judgments in the Pennsylvania state courts violated various laws and constitutional provisions. Plaintiffs' complaint includes seventy-six

---

[1]     Rohr is identified in the complaint as "John Roach," but both parties refer to him as James Rohr in their memoranda of law.

[2]     The parties divergently spell the name of this corporate entity as "For Your Kids, Inc." and "Four Your Kids, Inc." I adhere to the former, which is the spelling in the official caption of this case and in the answer filed by Fyk.

counts in all,[3] including (1) violations of the federal constitution and 42 U.S.C. § 1983,

(2) violations of various federal statutes, including (a) the Sherman Antitrust Act

("Sherman Act"), 15 U.S.C. § 1 *et seq.*, (b) the Bank Holding Company Act ("BHCA"),

12 U.S.C. § 1841 *et seq.*, (c) the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*, (d) the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 *et seq.*, and (e) numerous criminal provisions of Title 18 of

the U.S. Code, (3) state constitutional violations, and (4) state tort claims. Defendants

PNC and Rohr and, in a separate motion, Donaher and Tucker, now move to dismiss the

complaint for failure to state a claim upon which relief may be granted pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.[4]

## I.

---

[3] The complaint, which runs to 143 pages, is of a kind that should be firmly discouraged. Among other things, the complaint (1) is filled with needless repetition and irrelevancies, (2) alleges violations of multiple nonexistent statutes, (3) pleads the existence of diversity jurisdiction even though it lists both plaintiffs and numerous defendants as Pennsylvania residents, and (4) is larded with footnotes to legal authorities better found in a memorandum of law. While none of these infirmities bears on the merits of the arguments made in defendants' motions to dismiss, both this court and all parties to this litigation would have been better served by a shorter, plainer statement of plaintiffs' claims. *See* Fed. R. Civ. P. 8(a).

[4] Fyk has filed a *pro se* answer, which he seeks to submit on behalf of both himself and For Your Kids. *See* Docket No. 11. Normally, this court would strike the answer insofar as it purports to be submitted by a *pro se* litigant on behalf of a corporation. *See, e.g.*, *Penn Graphics Equip. Co. v. Globaltec Innovations, Corp.*, No. 06-cv-3247, 2006 WL 3144398, at *1 (E.D. Pa. Oct. 30, 2006) (striking all filings made on behalf of a corporation by a non-lawyer). Because of the view I take of this case, however, the propriety of Fyk's answer is moot.

Although the complaint in this case is lengthy and convoluted, the history of plaintiffs' dispute with the moving defendants[5] may be concisely stated. Plaintiff William Shipp and defendant Jason Fyk purchased a property on Coates Street in Coatesville, Pennsylvania in December 2003. Compl. ¶ 72. They took out a mortgage on that property from the National Bank of Malvern, at which Shipp is an employee. *See id.* ¶ 75. The title to the property and the mortgage were both listed "in Shipp's and Fyk's individual names." *Id.* ¶ 76. Fyk subsequently purchased another property in Coatesville, this one on Jane Street. *Id.* ¶ 84.

In April 2005, Fyk incorporated defendant For Your Kids, *id.* ¶ 88, and later that month, For Your Kids received Small Business Administration ("SBA") loans from defendant PNC, *id.* ¶ 89. Fyk "executed [a] personal surety agreement[] in favor of PNC on" those loans. *Id.* ¶ 90. The relationship between Fyk and Shipp subsequently soured, *see id.* ¶¶ 117-33, and, at some point, Fyk "defaulted against another creditor," *id.* ¶ 105, leading PNC to seek confessed judgments, apparently against the Coates Street and Jane Street properties, *see id.* ¶¶ 26, 213, 217. Donaher, on behalf of Tucker, represented PNC in those proceedings. *See id.* ¶ 26.

Shipp, who also brought a state-court contract action against Fyk, *see id.* ¶ 19, sought to intervene in the confessed judgment proceedings, *see id.* ¶ 20. PNC "moved to dismiss Shipp's intervention petition," and that motion was granted. *Id.* ¶ 21. Shipp

---

[5]     For convenience, I will use "defendants" to refer to the moving defendants.

appealed, but "the Superior Court quashed [the] appeal," *id.* ¶ 22, and the Pennsylvania Supreme Court "denied Shipp's allocatur petition as moot," *id.* ¶ 23, after PNC issued what plaintiffs call "partial and conditional release documents" on both properties, *id.* ¶¶ 213, 217. The Shipps then filed the complaint in this action on June 1, 2009. The complaint alleges that defendants' actions in seeking the confessed judgment, as well as their actions more generally with regard to Pennsylvania's confessed judgment procedures and SBA loans, deprived William Shipp of numerous constitutional and statutory rights.[6]

## II.

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," "detailed factual allegations" are unnecessary. *Twombly*, 540 U.S. at 555. Rather, plaintiffs must simply include enough facts to "state a claim to relief that is plausible on its face." *Id.* at 570.

---

[6]   Plaintiff Stacy Shipp is mentioned primarily with reference to both of the loss of consortium claims in the complaint. *See* Compl. ¶¶ 695, 697.

In reviewing a 12(b)(6) motion, "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "[R]easonable inferences" are also drawn in favor of the plaintiff, *id.*, but this court need not "'accept as true a legal conclusion couched as a factual allegation,'" *Twombly*, 550 U.S. at 555.

### III.

As a threshold matter, Tucker and Donaher argue that the *Rooker-Feldman* doctrine deprives this court of jurisdiction to hear plaintiffs' claims. *See* Tucker Mem. at 37-38. The *Rooker-Feldman* doctrine, under which federal district courts and courts of appeals "lack subject matter jurisdiction to review, directly or indirectly, state court adjudications," *In re Diet Drugs*, 282 F.3d 220, 240 (3d Cir. 2002), "'precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling,'" *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) (quoting *FOCUS v. Allegheny Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)). It thus "applies to cases 'brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Stoss v. Singer Fin. Corp.*, No. 08-cv-5968, 2010 WL 678115, at *3 (E.D. Pa. Feb. 24, 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In particular, the *Rooker-Feldman* doctrine bars review by this court of "'claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication.'" *Whiteford*, 155 F.3d at 674 (quoting *Gulla v. N. Strabane Twp.*, 146 F.3d 168, 170 (3d Cir. 1998)). "The actually litigated prong is principally useful where the claims before the state and federal courts are in all respects identical." *ITT Corp. v. Intelnet. Int'l*, 366 F.3d 205, 211 (3d Cir. 2004). "State and federal claims are inextricably intertwined," meanwhile, "'(1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must . . . take action that would render [the state court's] judgment ineffectual.'" *ITT Corp.*, 366 F.3d at 211 (quoting *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003)) (internal quotation marks omitted).

The doctrine is thus "narrow [in] scope," *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006): "[W]here a state action does not reach the merits of a plaintiff's claims, . . . *Rooker-Feldman* does not deprive the federal court of jurisdiction." *Whiteford*, 155 F.3d at 674; *accord, e.g.*, *ITT Corp.*, 366 F.3d at 211. More specifically, when a denial of intervention is not effectively a decision on the merits, the denial of intervention does not trigger the application of *Rooker-Feldman*. *See FOCUS*, 75 F.3d at 841.

Tucker and Donaher contend that plaintiffs' claims reduce to the proposition that

"the trial court, the Superior Court and the Pennsylvania Supreme Court improperly denied [plaintiffs'] right to intervene in the" confessed judgment proceedings "based upon the alleged acts of the defendants." Tucker Mem. at 38. This argument, however, slightly misunderstands what I take to be the nub of plaintiffs' grievances. Although plaintiffs clearly disagree with the state courts' ruling, the complaint's primary focus is on the alleged actions of the various defendants in instantiating and carrying out the confessed judgment action – which is to say that the complaint attempts to put before this court the merits of issues that the state courts declined to consider. This fact alone is a sufficient basis to conclude that the state courts did not "previously adjudicate" plaintiffs' claims.

The question of whether plaintiffs' claims are inextricably intertwined with the state courts' ruling is slightly more complex. The state courts' opinions denying intervention – which have been provided by plaintiffs as exhibits to the complaint[7] – go beyond merely "asserting that [the state courts] lacked jurisdiction" to entertain the intervention. *FOCUS*, 75 F.3d at 841. Rather, the Court of Common Pleas' October 1, 2007 order addresses two additional issues – (1) whether or not a partnership of Shipp and Fyk owned the properties at issue, and (2) whether "PNC . . . made false averments to

_____

[7]     Plaintiffs failed to attach the exhibits to the originally-filed version of the complaint. Plaintiffs did, however, petition to supplement the complaint with exhibits a week thereafter, and no defendant has objected to that request. The petition will therefore be granted as uncontested pursuant to Local Rule 7.1(c).

the Court and otherwise committed 'obstructionist malfeasance.'" Compl. Ex. 4, at 2-3. The Superior Court memorandum affirming the denial of intervention, while focused on jurisdictional issues, expresses the view that PNC did not have actual notice that the properties were owned by a partnership at the time it instituted the confessed judgment actions. *See id.* Ex. 8, at 9. This aspect of the Superior Court's decision was based on the conclusions that (1) "[t]he deed to the property does not indicate the property is owned by a partnership," *id.* at 8, and (2) "[u]nder the circumstances of the present case . . . the court would be limited to the four corners of the deed in determining whether the property was really partnership property," to the exclusion of parol evidence, *id.* at 9 (internal quotation marks omitted).

The claims in the complaint are, however, largely independent of the Pennsylvania courts' decisions that (1) a partnership did not own the properties, titled as they were in the individual names of Shipp and Fyk, (2) PNC's conduct in the Court of Common Pleas was unimpeachable, and (3) Shipp was not entitled to intervene. Count 1 of the complaint provides a convenient illustration. That count, pled as a violation of the Privileges and Immunities Clause of the Fourteenth Amendment, alleges variously that (1) "[d]efendants seized [one of the properties] . . . without bringing charges against Shipp or the [alleged] Partnership," (2) "[d]efendants . . . forc[ed plaintiffs] to continue in a hostile and dangerous business relationship with Fyk", in part by "fr[eezing Shipp] out of the courts," (3) "[d]efendants knowingly took and retained Shipp's property by *ex*

8

*parte* action," and (4) "[t]here can be no greater abridgement of rights and immunities than being told that your legal interests were subordinated to the one who illegally subordinated your interest in *ex parte* proceedings."  Compl. ¶¶ 339-41, 344.  Whatever the merits of this claim, it is not one that was ever decided by the state courts, and ruling on its merits would not entail a decision that the state courts were incorrect to deny intervention or that the expressed grounds for the denial were incorrect.[8]  Moreover, insofar as plaintiffs' allegations *do* "den[y] a legal conclusion that a state court has reached," the result is simply that "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."  *Exxon Mobil*, 544 U.S. at 293.

Accordingly, I conclude that the *Rooker-Feldman* doctrine does not deprive this court of jurisdiction over plaintiffs' claims, and I turn to the question of whether the complaint states one or more claims on which relief may be granted.

## IV.

Counts 1-12 of the complaint allege federal constitutional violations, and Count 22 alleges an additional claim pursuant to 42 U.S.C. § 1983.  All of plaintiffs' federal constitutional claims must, of course, be brought under § 1983, *e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001), which "provides redress for certain violations of rights arising under the federal constitution or laws of the United

_____

[8]      Given that the complaint alleges that PNC subsequently released the properties, there is no way that this court could, at present, render the state courts' judgment on intervention "ineffectual."

States which are caused by persons acting under color of state law," *Mosley v. Yaletsko*, 275 F. Supp. 2d 608, 612 (E.D. Pa. 2003). Thus, "[t]o establish a valid claim under § 1983, a claimant must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Robb v. City of Phila.*, 733 F.2d 286, 290-91 (3d Cir. 1984).

Here, the defendants are private parties. Thus, plaintiffs must satisfy "a two-part inquiry" in order to maintain claims against the defendants under § 1983. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1265 (3d Cir. 1994). "'First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "'Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Lugar*, 457 U.S. at 937). A state actor is one who is "'a state official,'" or who "'has acted together with or has obtained significant aid from state officials,'" or whose "'conduct is otherwise chargeable to the State.'" *Id.* (quoting *Lugar*, 457 U.S. at 937).

Defendants do not argue that the first prong of this test is not met, and it is. Plaintiffs' claims are largely based upon a confessed judgment action in the state courts, and "[t]he power to confess judgment depends on a state statute and the procedure for

10

doing so depends on state procedural rules of general application." *Jordan*, 20 F.3d at 1265. A "right or privilege created by the State" is thus at issue.

The pertinent question is therefore whether or not defendants may fairly be said to be state actors. They are not state officials, so defendants are state actors only if the "state [has] significantly contribute[d] to the [alleged] constitutional deprivation," by, for instance, "authorizing its own officers to invoke the force of law in aid of the private persons' request." *Id.* at 1266. Both plaintiff and defendants rely on the Third Circuit's decision in *Jordan* for support on this score. In *Jordan*, the Court of Appeals held that "a state procedure permitting private parties to file a complaint and confess judgment essentially involves acquiescence by the state, not compulsion," and that "[i]n such circumstances, private conduct is not attributable to the state." *Id.* (internal quotation marks omitted). Nor does a "confession of judgment itself . . . so intimately involve [landlords] and their Attorneys in state action that they could be treated as acting under color of law." *Id.* The Third Circuit's holding was grounded in the fact that while "entry of the [confessed] judgment" has "consequences," "[i]t involves no immediate seizure or deprivation of property under force of law." *Id.* at 1266 n.17.

By contrast, the Court of Appeals held that "a judgment creditor who uses Pennsylvania's procedure for executing on a confessed judgment acts under color of law and becomes a state actor." *Id.* The relevant distinction between the institution of a confessed judgment action and the issuance of writs of execution is, the Third Circuit

held, that "writs of execution and attachment involve actions by state officials that plainly involve or threaten the use of legal force." *Id.* at 1267.  Thus, under *Jordan*, otherwise-private parties who merely seek and receive confessed judgments are not state actors, while those who execute on confessed judgments are state actors.

Under the facts alleged in plaintiffs' complaint, PNC, via its attorneys at Tucker, filed a confessed judgment action against two properties – presumably the Coates and Jane Street properties, at least one of which was titled in the names of Shipp and Fyk. Compl. ¶¶ 18, 76.  An "execution notice[]" was then sent to Fyk as to each property.  *Id.* ¶ 31; *see also id.* ¶ 28.  The complaint does not, however, allege that PNC ever sought to execute on the confessed judgment; rather, it reveals that PNC "issued . . . purported releases of [the properties]" in 2008.  *Id.* ¶ 58.

Under *Jordan*, defendants' action of filing for confessed judgments is an insufficient basis for the conclusion that defendants acted as state actors.[9]  The complaint, meanwhile, fails to allege that defendants took the step – execution of a confessed

---

[9]    *Jordan* differs factually from this case in certain ways – it (1) concerned personal and not real property, *see* 20 F.3d at 1258, (2) occurred before certain changes were made to Pennsylvania's confessed judgment procedures, *see* Compl. ¶¶ 274-96, and (3) did not concern a third party to the confessed judgment action.  But the rules for confessed judgments of real property concern the same two steps described in *Jordan*, the rules changes described in the complaint are not relevant to the core procedures held by *Jordan* to be pertinent to defendants' status as private or state actors, and while plaintiffs' interest in the proceedings may differ from the interests of a judgment debtor, that distinction is irrelevant to the degree of state involvement in the alleged constitutional deprivations.

judgment – that *Jordan* held was sufficient to transform judgment creditors into state actors. Thus, if defendants were state actors, it was because "execution notices" were sent to Fyk.

The sending of such notices was not considered in *Jordan*, and this issue is left somewhat murky by the complaint, which – despite purporting to include the relevant notices as attachments, *see* Compl. ¶ 31 – neither attaches nor describes the notices. Plaintiffs do, however, include numerous allegations concerning Pennsylvania's confessed judgment procedure, *see, e.g.*, *id.* ¶¶ 274-96. This court will therefore take judicial notice of the relevant state Rules of Civil Procedure. *See, e.g.*, *Pennsylvania v. Lockheed Martin Corp.*, No. 09-cv-0821, __ F. Supp. 2d __, 2010 WL 456810, at *1 n.2 (M.D. Pa. Feb. 1, 2010) (noting that "the court may take judicial notice of public records").[10] Pursuant to those rules, notice of the confessed judgment action may be served either prior to or contemporaneously with a writ of possession – which writ is the instrument by which a confessed judgment is executed. *See* Pa. R. Civ. P. 2973.1-.3. Because the complaint alleges that notice was served but *not* that a writ of possession was served, plaintiffs' allegations only support the inference that PNC served Fyk with a pre-writ notice pursuant to Pennsylvania Rule of Civil Procedure 2973.2 – or some other kind

---

[10] This court may take judicial notice of appropriate items without converting defendants' motions into motions for summary judgment. *See, e.g.*, *Lord v. Erie County*, No. 08-cv-213, 2010 WL 56095, at *6 n.10 (W.D. Pa. Jan. 5, 2010) (quoting *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002)).

of notice unaccompanied by an actual execution.

Like the entry of a confessed judgment itself, the sending of pre-execution notice does not "involve[] [the] immediate seizure or deprivation of property under force of law." *Jordan*, 20 F.3d at 1266 n.17. Such notice essentially gives the confessed judgment defendant time in which to "petition for relief from a confessed judgment," Note to Pa. R. Civ. P. 2973.2(a), and therefore is not a means of state compulsion; it merely is notice that such compulsion may follow. Accordingly, under *Jordan*, the mailing of notice does not so entangle the state in the enforcement of private claims to property as to transform the otherwise private actions of the confessed judgment plaintiff or its attorneys into state action. Nor can I conclude that the fact that Shipp, not Fyk, brings this suit makes any difference as to the existence *vel non* of state action: Although Shipp was denied leave to intervene in the confessed judgment action, any injuries inflicted on Shipp as co-owner of Coates Street by the confessed judgment actions were, at worst, identical to Fyk's as co-owner of the properties in question. Nothing in the confessed judgment procedure invoked by defendants, in other words, supports a finding of state action in this case.

Nor does anything else in the prodigiously prolix complaint form a sufficient basis for determining that the moving defendants were state actors. The only actions allegedly taken by the state courts, for instance, involve the denial of Shipp's motion to intervene in the confessed judgment action itself. The complaint further alleges that there were

"radical changes to [Pennsylvania's] confessed judgment lien law" "[i]n 1996 and 2003,"
Compl. ¶ 279, but there is no indication of how these changes render defendants state
actors with regard to their actions concerning the properties at issue – especially given
that plaintiffs believe that the moving defendants were not aided by state officials but
rather "collaborated and conspired to defraud the Civil Procedures Rules Committee," *id.*
¶ 295. (The Court of Common Pleas is also referred to as "an unknowing target of
deception." *Id.* ¶ 321.) Nor do plaintiffs' repeated assertions that defendants were, in
fact, "state actor[s]" or "[s]tate [p]rosecutor[s]" suffice to demonstrate that those labels
are correct. *E.g.*, Compl. ¶¶ 162-68, 170, 175, 178, 180, 182-83, 225, 388-90.

Accordingly, defendants' motions will be granted as to Counts 1-12 and 22 of the
complaint.

## V.

The federal statutory causes of action in plaintiffs' complaint invoke (1) the
Sherman Act, (2) the BHCA, (3) the FDCPA, (4) RICO, and (5) various criminal
provisions in Title 18. I consider these claims in turn.

### A.

Count 13 of the complaint alleges a violation of the Sherman Act. It is unclear
whether plaintiffs intend to plead a violation of § 1 or § 2 of the Act; the complaint lists
§ 2 as the relevant statute but speaks in terms of restraint of trade, which is governed by
§ 1. Whether plaintiffs intend to proceed under § 1 or § 2, however, they must show that

they have standing to bring an antitrust claim. In the Third Circuit, five factors are used to determine whether or not a plaintiff has antitrust standing:

> "(1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages."

*Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 320 (3d Cir. 2007) (applying these factors in the context of § 2) (quoting *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997)); *see also City of Pittsburgh v. W. Penn Power Corp.*, 147 F.3d 256, 264 (3d Cir. 1998) (applying the same factors in the context of a § 1 claim). Antitrust standing is thus "'essentially a balancing test comprised of many constant and variable factors.'" *W. Penn Power Corp.*, 147 F.3d at 265 (quoting *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 964-65 (3d Cir. 1983)). Nevertheless, the Third Circuit has instructed that a district court "should first address the issue of whether the plaintiff suffered an antitrust injury," and if no such injury "is . . . found, further inquiry is unnecessary." *Id.*; *see also, e.g., id.* ("[A] showing of antitrust injury is a necessary but insufficient condition of antitrust standing.") (internal quotation marks omitted).

An antitrust injury is one "'of the type the antitrust laws were intended to

16

prevent.'" *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quoting

*Alberta Gas Chems. Ltd. v. E.I. du Pont de Nemours & Co.*, 826 F.2d 1235, 1240 (3d Cir.

1987)). Specifically, "'[a]n antitrust plaintiff must prove that challenged conduct affected

the prices, quantity or quality of goods or services,' not just his own welfare," *id.* (quoting

*Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991)), because "'antitrust

law aims to protect competition, not competitors,'" *id.* (quoting *Alberta Gas Chems.*, 825

F.2d at 1241). The injury must be the "direct effect of" "the antitrust violation," which

requires more than "a mere causal link," and "whether the plaintiff has experienced an

antitrust injury depends in part on its source – did the injury flow from that which makes

the defined acts unlawful." *W. Penn Power Corp.*, 147 F.3d at 265, 268. Thus, as a

general matter – though not, perhaps, as a hard and fast rule – "only competitors and

consumers will suffer antitrust injury." *Carpet Group Int'l v. Oriental Rug Importers*

*Ass'n, Inc.*, 227 F.3d 62, 77 (3d Cir. 2000).

It is somewhat difficult to garner from the complaint what, precisely, plaintiffs

claim amounts to an antitrust violation. Whatever plaintiffs' intent, however, nothing in

Count 13 alleges an antitrust injury. The only claimed harms to plaintiffs are that

defendants (1) "assert[ed] priority over superior prior contract rights," Compl. ¶ 431 –

presumably rights allegedly held by plaintiffs – and (2) "maligned [William] Shipp's title,

reputation, and control of his property and finances," increasing the risk he faced "while

claiming no effect," *id.* ¶ 432. These are injuries only to plaintiffs' "own welfare," not

17

"the prices, quantity or quality of goods and services," *Mathews*, 87 F.3d at 641, and are therefore not the type of injuries the antitrust laws are meant to prevent.

Further, any injury suffered by plaintiffs is necessarily an indirect, not a direct, result of defendants' actions. The allegations in the complaint most plausibly tied to an antitrust theory imply that defendants control the market for SBA loans. Plaintiffs are neither competitors of defendants nor, as far as the complaint discloses, consumer-debtors of SBA loans. Indeed, William Shipp's only relationship to the defendants is as (1) the co-owner of a property subjected to a confessed judgment under the terms of the other co-owner's loan, and (2) a failed state-court intervenor. Plaintiffs therefore cannot have been directly harmed by any actions defendants took in the SBA loan market. It is the debtor – which is to say Fyk, not the Shipps – who would feel the direct effects of those actions. Plaintiffs, in other words, have not alleged either an antitrust injury or a sufficient causal link. In light of these shortcomings, I need not consider the other factors in the antitrust standing analysis.[11] *See W. Penn Power Co.*, 147 F.3d at 269 (affirming the dismissal of antitrust claims after determining that plaintiffs had not satisfied these two prongs of the analysis).

Because plaintiffs lack standing to maintain Count 13, defendants' motions will

---

[11]     I also note that Fyk and other debtors, as the direct victims of any anticompetitive activity, would be better suited to challenge any antitrust violations by the defendants. The fourth factor of the standing test thus also weighs against plaintiffs in this case.

accordingly be granted as to that count.

**B.**

Count 14 seeks to allege a violation of the anti-tying provisions of the BHCA, 12 U.S.C. § 1972.  Pursuant to 12 U.S.C. § 1975, "[a]ny person who is injured in his business or property by reason of anything forbidden in section 1972 . . . may sue therefor in [the] district court[s]."  *See also, e.g.*, *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1345-46 (11th Cir. 1997) (noting that in 1970, "Congress enacted § 1975 of the BHCA, creating a private right of action in favor of individuals harmed by virtue of violations of the anti-tying provisions of the BHCA").  Thus, in order to have standing to sue under the BHCA, a plaintiff must at least allege an injury that is caused by the allegedly unlawful tie.  *See, e.g.*, *Baggett v. Fist Nat'l Bank of Gainesville*, 117 F.3d 1342, 1346 (11th Cir. 1997); *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 660 (9th Cir. 1988); *Sterling Coal Co. v. United Am. Bank of Knoxville*, 470 F. Supp. 964, 965 (E.D. Tenn. 1979); *see also Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 693 F. Supp. 666, 669 (N.D. Ill. 1988) (limiting standing to those who allege "direct" injuries).  Further, pursuant to the language of the statute, the injury must be one to "business or property."

Defendants correctly argue that plaintiffs have not alleged an injury caused by the tie.  *See* PNC Mem. at 25-26.  Plaintiffs' BHCA allegations are limited to the allegations that (1) "[d]efendants illegally require that its SBA borrowers provide vigilante bailout

services upon PNC's decision to confess judgment, whereby the debtor is made the collections enforcer against third parties who are unprepared and unprotected from such attack," and (2) "PNC does not properly screen these debt collection recruits nor train them adequately, leaving defaulting debtors free to wreak havoc on the marketplace." Compl. ¶¶ 438-39. These allegations are bereft of any suggestion that the alleged tie between SBA loans and "vigilante bailout services" harmed plaintiffs.

Moreover, even reading the phrase "injured in his business or property" broadly to include *any* injury to business or property, none of the other allegations in the complaint are sufficient to confer § 1975 standing on plaintiffs. Plaintiffs do allege that (1) Fyk threatened them, *see id.* ¶ 144, (2) he did so at the behest of the other defendants, *see id.* ¶¶ 392-93, 400, 649, (3) plaintiffs suffered "financial exposure" as a result, *id.* ¶ 399, (4) "[i]n response to Fyk's threats, [William] Shipp recused himself from [the] Board of Directors decisions" at the bank for which Shipp works, *id.* ¶ 230, and (5) Fyk was used by the defendants "to extort funds from unsuspecting members of the general public," *id.* ¶ 495, *see also id.* ¶ 499. But the only harms to plaintiffs – as opposed to the general public – actually alleged in these portions of the complaint are (1) the presumably personal psychic harm from financial exposure and (2) the need to recuse. These are not harms to business or property. Any other harms alleged in the complaint, meanwhile, are not tied to anything that can be construed as "vigilante bailout services" provided by Fyk. Accordingly, nothing in the complaint establishes plaintiffs' standing to sue for a BHCA

violation, and defendants' motions will be granted as to Count 14.

### C.

Count 15 of the complaint alleges that the defendants violated the FDCPA, 15 U.S.C. § 1692 *et seq.* This count must be dismissed as to PNC and Rohr, because "the FDCPA's provisions generally apply only to 'debt collectors,'" not creditors. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). Thus, "[c]reditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act." *Id.* (quoting *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998)). The act also exempts "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Here, the complaint reveals that PNC originated the loan to For Your Kids on which it later tried to collect. *See* Compl. ¶ 89 ("PNC granted two SBA guaranteed loans to For Your Kinds totaling $85,000"); ¶¶ 109-10 (speaking of "the time that PNC issued SBA loans to Fyk"), ¶ 162(b) (noting the "PNC-Fyk *lien-generating* contract") (emphasis supplied), ¶ 303 (alleging that PNC was aware of various pieces of information "prior to Fyk loan issuance"), ¶ 304(f)(vi) (discussing "PNC's assessment of Fyk's character prior to loan origination"), ¶ 372 (noting "PNC's private contract with Fyk"), ¶ 383 (alleging that "Fyk conveyed contingent property interests to PNC in December 2006"), ¶ 466 (alleging that "Fyk was insolvent at loan origination, and PNC could have identified this risk at time of loan origination"). The FDCPA claim may therefore not be asserted against PNC. Rohr,

meanwhile, is an officer of PNC, and there are no allegations in the complaint to suggest that he attempted to collect any debts for any other institution or for PNC under a different name. The claim is thus also precluded as to Rohr.

Tucker and Donaher, meanwhile, argue that plaintiffs "do[] not allege that [Tucker or Donaher] attempted to collect *any* debt from [them]." Tucker Mem. at 28. This argument is well-taken. Plaintiffs' FDCPA claims arise under 15 U.S.C. § 1692d, e, f, and g, *see* Compl. ¶¶ 444-47, 449, and each of these sections applies only if statements or communications are made "in connection with the collection of any debt," 15 U.S.C. §§ 1692d, 1692e, 1692g(a), or "to collect or attempt to collect any debt," *id.* § 1692f. *See also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005) (noting this feature with regard to §§ 1692e and 1692g). Nothing in the complaint alleges that any communications between Donaher and Shipp were related to the collection of a debt.

In fact, all of the facts and factual allegations currently before this court are to the contrary: According to the complaint, the attorney defendants (1) sent William Shipp a letter rejecting a check sent by Shipp to PNC, (2) conversed with Shipp before oral argument in the Superior Court, and (3) filed documents in opposition to Shipp's petition to intervene in the state court proceedings. *See* Compl. ¶¶ 189-90. But (1) the letter merely returns the check and refuses to disclose information in discovery, *see* Compl. Ex. 5A, (2) the conversation consisted only of "Donaher's rejection of Shipp's offer to discuss lien resolution," *id*. ¶ 190, and (3) Tucker's judicially-noticed filings in the

Superior Court do not attempt to collect a debt from plaintiffs.[12] Thus, as the plaintiffs have "allege[d] no facts to support the contention that" communications they received from Donaher and Shipp "constituted a collection or attempt to collect" the debt, the allegations that the attorney defendants violated the FDCPA will be dismissed.

### D.

Count 23 of the complaint alleges that the defendants violated 18 U.S.C. § 1962(c), the portion of RICO that makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The same count alleges that defendants violated 18 U.S.C. § 1962(d), which outlaws conspiracies to violate the other provisions of § 1962.

RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The Third Circuit has interpreted this language "as requiring a RICO plaintiff to make two related but analytically distinct threshold showings relevant in this appeal: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna,*

_____

[12]     Further, the Court of Common Pleas, in an opinion attached to the complaint, held that Tucker's filings in that court contained no "false averments." Compl. Ex. 4, at 2.

*Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  Moreover, "'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Id.* (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).  This requirement "can be satisfied by allegations and proof of actual monetary loss," *id.*, or by a "fail[ure] to perform under the parties' contractual arrangement," *id.* at 490.

Nowhere in the extraordinarily lengthy complaint do plaintiffs allege that they suffered any such concrete harms.  The RICO count, in fact, does not allege *any* harm to the plaintiffs.  *See* Compl. ¶¶ 492-96.  Elsewhere, plaintiffs claim that they suffered injuries such as (1) "a cloud over every personal decision that [they] have to make in every facet of their lives," *id.* ¶ 140-41; *see also id.* ¶¶ 145-46, (2) "threats against Shipp's person, employment, [b]usiness relationships, reputation, and health," *id.* ¶ 144, (3) recusals from decisions made by the bank of which William Shipp is a director and the need to "subordinate [Shipp's] own . . . claims" against Fyk to those held by Shipp's bank, *id.* ¶¶ 230-31, *see also id.* ¶ 673, (4) "premature" concerns about the plaintiffs' "ability to endure market pressures" and ability to "care for their children," *id.* ¶¶ 543-44, (5) "the indignity of being toyed with before the courts," *id.* ¶ 546, and (6) being "frozen out of the legal process," ¶ 176.  None of these injuries is concrete and financial.[13]

---

[13]     Plaintiffs do *not* allege that they suffered financial harm because William Shipp subordinated his claims against Fyk to those against NBM.  Even if the complaint included such allegations, however, it would be unclear how that particular harm was proximately caused by defendants' alleged RICO activities.

Plaintiffs also allege that defendants' "activities unreasonably caused injury, harm, damage, inconvenience, annoyance, and discomfort to [William] Shipp's reasonable enjoyment and use of his reasonable rights in" the property at issue. *Id.* ¶ 628. This statement never specifies *what* damage plaintiffs suffered, and therefore does not allege a concrete financial injury. Paragraph 628 is also nothing more than a legal conclusion, which is insufficient to overcome defendants' motions to dismiss. *See Weiss v. First Unum Life Ins.*, No. 02-cv-4249, 2003 WL 25713970, at *5 (D.N.J. Aug. 27, 2003) ("Plaintiff's vague and conclusory assertion that he was damaged because he deferred purchases and lost medical benefits are wholly insufficient to establish a compensable injury to business or property."); *Heimbecker v. 555 Assocs.*, No. 01-cv-6140, 2003 WL 21652182, at *14 (E.D. Pa. Mar. 26, 2003) (dismissing a RICO count where the allegations of injury amounted to "bald assertions, subjective characterizations, and legal conclusions"). Finally, the allegations that "Fyk breached contractual obligations to Shipp," *id.* ¶ 643, and that "[d]efendants and[/]or their agents irreparably harmed the Plaintiffs in their businesses," *id.* ¶ 647, are equally conclusory and therefore insufficient to state an injury that is cognizable under RICO.[14]

---

[14] The complaint veers toward attempting to state claims on behalf of Shipp's bank in several places. The bank, however, is not a plaintiff in this action, and "[t]hat an individual shareholder or employee may sustain harm incidental to the injury to [a] corporation does not confer [RICO] standing upon him." *Jordan v. Berman*, 792 F. Supp. 380, 386 n.11 (E.D. Pa. 1992), *vac'd in part on other grounds sub nom. Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994).

Accordingly, I find that plaintiffs have not established standing to sue under RICO, and defendants' motions will be granted as to Count 23.

## E.

Counts 16-21 and 24-29 of the complaint allege that the defendants violated various federal criminal statutes contained in Title 18 of the United States Code. As a general matter, "Title 18 is a federal criminal statute which does not create civil liability or a private right of action." *U.S. ex rel. Stafford v. Luongo*, No. 85-cv-1642, 1989 WL 45910, at *2 (E.D. Pa. Apr. 19, 1989). Thus, private parties may not maintain suit under most provisions of Title 18.

This general rule applies to almost all of the remaining statutes invoked in the complaint. Count 17, for instance, alleges that the defendants acted as accessories after the fact in violation of 18 U.S.C. § 3. That statute, however, "do[es] not provide a private right of action." *Keyter v. Bush*, No. 08-cv-97, 2008 WL 613129, at *2 (D. Del. Mar. 5, 2008); *accord, e.g., Thomas v. Bryant*, No. 09-cv-5189, 2009 WL 2473662, at *2 (W.D. Wash. Aug. 7, 2009). Neither does (1) the bankruptcy fraud statute, 18 U.S.C. § 157, *see Carpenter v. Young*, No. 04-cv-927, 2005 WL 1364787, at *4 (E.D. Pa. June 1, 2005); (2) 18 U.S.C. §§ 286 and 371, which criminalize conspiracies against the United States, *see, e.g., Jones v. Lockett*, No. 08-cv-16, 2009 WL 2232812, at *8 (W.D. Pa. July 23, 2009) (§ 371); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (§ 286); (3) the

mail, wire, and bank fraud statutes, 18 U.S.C. §§ 1341, 1343, & 1344,[15] *see, e.g., Jones*, 2009 WL 2232812, at *8 (§ 1341); *Beale v. Rubin & Rothman, LLC*, No. 08-cv-4279, 2009 WL 1916322, at *5 (D.N.J. June 29, 2009) (§§ 1341 and 1344); *Kovalev v. City of Phila.*, No. 07-cv-4875, 2008 WL 5377625, at *7 (E.D. Pa. Dec. 23, 2008) (§§ 1341 and 1343); *Fleishman v. Scilley*, No. 03-cv-4639, 2004 WL 2203746, at *1 (E.D. Pa. Sept. 30, 2004) (same); (4) 18 U.S.C. § 876, which concerns mailing threatening communications,[16] *see, e.g., Weiss v. Sawyer*, 28 F. Supp. 2d 1221, 1227 (W.D. Okla. 1997); *Bryant v. Yellow Freight Sys.*, 989 F. Supp. 966, 968 (N.D. Ill. 1997); (5) 18 U.S.C. § 880, which concerns the proceeds of extortion, *see Giron v. Abascal*, No. 07-cv-110, 2007 WL 1722404, at *1, *4 (D.N.M. May 3, 2007), or (6) the attempt and conspiracy statute, 18 U.S.C. § 1349, *see Rogerson v. United States*, No. 08-cv-5060, 2009 WL 1361875, at *1, *5 (D.S.D. May 13, 2009). Defendants' motions will therefore be granted as to counts 17-20 and 24-29.

Further, although it appears that no federal court has yet addressed the question of whether or not 18 U.S.C. § 893, which criminalizes the willful lending of "money or

---

[15]      Count 25 of the complaint, which alleges a wire fraud violation, is pled as a violation of 18 U.S.C. § 1342, not 18 U.S.C. § 1343. Because § 1342 concerns sending and receiving mail under fictitious names, I assume that plaintiffs intended to list § 1343 as the relevant statute. In any case, § 1342 also lacks a private right of action. *See, e.g., Weiss v. Sawyer*, 28 F. Supp. 2d 1221, 1227 (W.D. Okla. 1997); *Drance v. Simpson Thacher & Bartlett*, No. 96-cv-5729, 1997 WL 442071, at *5 (S.D.N.Y. Aug. 5, 1997).

[16]      Count 27 of the complaint actually refers to 18 U.S.C. § 1876, which does not exist. Because that count deals with the mailing of threatening communications, I assume that plaintiffs meant to plead a violation of § 876.

property . . . for the purpose of making extortionate extensions of credit," contains a private right of action, this court concludes that it does not. There is no such right in the language of the statute, and § 893 is once again a "criminal statute [that] do[es] not support civil causes of action." *Carpenter*, 2005 WL 1364787, at *4. For this reason, the motions will also be granted as to Count 21.

Finally, while 18 U.S.C. § 1031[17] "does permit a private cause of action, [that] private cause of action is limited to employee whistle blowers." *Jones*, 2009 WL 2232812, at *9; *see also* 18 U.S.C. § 1031(h)(1) (providing a cause of action for individuals who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by an employer because of lawful acts done by the employee"). Plaintiffs do not allege that they are or ever were employees of the moving defendants, and defendants' motions will therefore also be granted as to Count 16 of the complaint.

## VI.

The preceding sections conclude that all of the federal claims against PNC, Rohr, Tucker, and Donaher must be dismissed.[18] As noted above, Fyk and For Your Kids have

---

[17] On its face, Count 16 attempts to plead a violation of 18 U.S.C. § 1931, which does not exist. Both that count and 18 U.S.C. § 1031 are, however, captioned "major fraud against the United States," so I construe that count as attempting to state a violation of § 1031.

[18] Because I reach this conclusion for the reasons given above, I will not address the numerous additional arguments presented in defendants' motions.

filed an answer to the complaint, and the alleged "PNC/[Tucker] Clan" and the as-yet unidentified defendants have filed no response to the complaint. Nevertheless, the federal counts will be dismissed as to all defendants. Plaintiffs' claims under the federal constitution, the Sherman Act, the BHCA, RICO, and Title 18 cannot proceed against the non-moving defendants for precisely the reasons enunciated in Sections III, IV.A-B, and IV.D-E above. The FDCPA count, meanwhile, is subject to dismissal because the non-moving defendants, like Tucker and Donaher, are not alleged to have attempted to collect a debt from the Shipps.[19] Because it therefore appears that all federal claims against all defendants are precluded for reasons substantially identical to reasons raised in the moving defendants' memoranda of law, to which plaintiffs have had an opportunity to respond, this court will *sua sponte* dismiss the federal claims against the non-moving defendants. *See Grine v. Colburn's Air Conditioning & Refrigeration*, No. 09-cv-11, 2009 WL 2634179, at *1 (W.D. Pa. Aug. 25, 2009); *Freedom Med. Inc. v. Gillespie*, 634

---

[19]     Plaintiffs repeatedly assert that the other defendants used Fyk "to enforce collections." Compl. ¶ 304(e); *see also, e.g., id.* ¶ 313. The complaint does not allege, however, that Fyk ever attempted to collect a debt from Shipp, and the communications from Fyk to Shipp attached as exhibits also give no hint that Fyk was attempting to do so. *See id.* Exs. 1, 2, 7. A letter from Fyk to Shipp's counsel that is attached to the complaint is a settlement offer that asks, *inter alia*, that Shipp pay him "$967 for materials and work to the property." *Id.* Ex. 11. The courts in this circuit that have considered this question have determined that communications to a debtor's attorney do not fall within the ambit of the FDCPA. *See, e.g., Wright v. Phelan, Hallinan & Schmieg, LLP*, No. 09-cv-3538, 2010 WL 786536, at *4-*6 (E.D. Pa. Mar. 8, 2010) (citing further cases). Further, the letter to Shipp's counsel is manifestly *not* an attempt to collect any debt for the other defendants, and it is PNC's alleged collection attempts – directly and via Tucker and Fyk – that underpin plaintiffs' FDCPA claim.

F. Supp. 2d 490, 507 n.6 (E.D. Pa. 2007); *see also, e.g.*, *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (noting that this court "may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action").

With no federal claims remaining in this case, the pendent state claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). In deciding whether to retain jurisdiction over state claims once all of the federal claims in a case have been dismissed, this court considers "judicial economy, convenience, fairness, and comity." *Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). Because this court is dismissing the complaint before discovery, judicial economy strongly weighs in favor of dismissal of the remaining claims. Comity, meanwhile, counsels allowing the Pennsylvania state courts to determine these issues, and I can perceive no unfairness or inconvenience to plaintiff if these claims are litigated in the appropriate state forum.[20]

## VII.

Finally, I consider whether dismissal of plaintiffs' federal claims should be with or without prejudice to amendment of the complaint. Amendment of Counts 16-21 and 24-29 would be futile, because the statutes involved in those counts either contain no private

---

[20] In this regard, I note that plaintiff has not alleged that defendants have complete control over the state courts – only that Pennsylvania's confessed judgment procedure is tainted.

right of action at all or no private right of action that encompasses plaintiffs. Those counts will accordingly be dismissed with prejudice. Similarly, because I can not imagine any set of facts broadly consistent with the current complaint that could sufficiently allege state action on the part of the defendants, Counts 1-12 and 22 will also be dismissed with prejudice. *See, e.g.*, *Thompson v. Eva's Village & Sheltering Program*, No. 09-cv-1510, 2009 WL 3486050, at *7 (D.N.J. Oct. 28, 2009). Count 13 will be dismissed with prejudice because plaintiffs would be unable to state an antitrust injury in an amended complaint, and Count 15 must be dismissed with prejudice as pled against PNC and Rohr, given that those defendants may not be considered debt collectors with regard to the SBA loan. By contrast, Counts 14 and 23, and Count 15 insofar as it applies to Tucker and Donaher, are being dismissed for pleading deficiencies that may potentially be remedied by amendment of the complaint; those counts will accordingly be dismissed without prejudice. Plaintiffs will be afforded thirty (30) days in which to file an amended complaint, with the proviso that the complaint must, this time, strictly comply with Rule 8(a)(2)'s mandate that it include "a short and plain statement of the claim showing that the pleader is entitled to relief."

  An appropriate order accompanies this opinion.